PEOPLE v McDONALD

Docket No. 62077. Argued November 13, 1979 (Calendar No. 1).—
   Decided June 24, 1980.

   Lee A. McDonald was found guilty but mentally ill by a jury in
   Wayne Circuit Court, William Leo Cahalan, J., of first-degree
   murder in the perpetration or attempted perpetration of rape.
   The defendant argues that the crime of rape no longer exists
   and cannot be a part of the statutory charge of first-degree
   murder because in 1974 the Legislature repealed the statute
   which defined rape as "carnal knowledge" of a female and
   substituted various crimes of criminal sexual conduct. He also
   argues that, as a male prosecuted for rape under the first-
   degree murder statute using the "carnal knowledge" definition
   of rape, he was unconstitutionally denied the equal protection
   of the laws because the new criminal sexual conduct statute
   recognizes rape as only one form of criminal sexual conduct,
   applicable to both males and females, but women may not be
   prosecuted for a murder committed in the commission of an act
   of criminal sexual conduct using the carnal knowledge defini-
   tion of the first-degree murder statute. The Court of Appeals,
   N. J. Kaufman, P.J., and Beasley and Mahinske, JJ., affirmed,
   rejecting the defendant's arguments on the felony-murder is-
   sues and the sufficiency of the evidence (Docket No. 77-1294).
   Defendant appeals. *Held:*
      1. The former "carnal knowledge" definition of rape in the

REFERENCES FOR POINTS IN HEADNOTES
[1-3, 6, 7] 65 Am Jur 2d, Rape § 1.
[2] 40 Am Jur 2d, Homicide § 72.
[3, 4] 73 Am Jur 2d, Statutes § 391.
   Effect of simultaneous repeal and re-enactment of all, or part, of
      legislative act. 77 ALR2d 336.
[4] 40 Am Jur 2d, Homicide § 482 *et seq.*
   73 Am Jur 2d, Statutes § 343.
[5, 7] 16A Am Jur 2d, Constitutional Law §§ 750, 769.
   Constitutionality of rape laws limited to protection of females only.
      99 ALR3d 129.
[8] 30 Am Jur 2d, Evidence § 1080 *et seq.*, § 1134 *et seq.*
   40 Am Jur 2d, Homicide §§ 425, 442.

Penal Code basically recodified prior statutes which incorporated the common-law definition of the crime. The term "rape", as used in the first-degree murder statute, was intended to include conduct which was originally proscribed at common law and subsequently codified by the Legislature. Absent express legislative action to amend the first-degree murder statute, the definition of "rape" previously used by trial judges continued in force. Furthermore, the criminal sexual conduct statute continues to prohibit the acts for which the defendant was prosecuted on a first-degree murder charge in this case. The conduct proscribed as "rape" continues to be cognizable under the laws of Michigan in a form sufficient to apprise persons in the defendant's position of the proscribed behavior. The defendant was provided with adequate notice of the conduct for which he was subject to punishment; there was no error in charging the defendant and instructing the jury using as the definition of rape the one previously used by trial judges.

2. The defendant argues that use of the definition of rape as carnal knowledge of a female creates a statutory distinction based upon the defendant's sex, because under the new statute women as well as men can commit conduct constituting criminal sexual conduct but only men could be charged with first-degree murder in the perpetration or attempted perpetration of a rape. The classification drawn by the former rape statutes between male and female defendants has a fair and substantial relation to the object of the legislation. Even under the proposed Equal Rights Amendment to the Constitution of the United States, statutes proscribing rape by males and not by females would remain defensible because they are based on a biological fact unique to males. Further, rape by men presents a substantial criminal problem for society which is not equally true of rape by women; the Legislature was justified in isolating and treating as criminal such behavior by men. The classification rests upon differences which have a substantial relation to the important governmental object advanced by the legislation. Apparently, the Legislature believed the act of rape to be an inherently dangerous crime which justified its inclusion in the first-degree murder statute. Thus, the use of the common-law definition creates no arbitrary classification and does not violate the Equal Protection Clause.

3. There was no reversible error in the instruction to the jury, without objection, that the people must prove beyond a reasonable doubt that the victim's death was "caused by an act of the defendant or that he consciously created a very high degree of risk of death for another with the knowledge that it

probably would cause death". The defendant's argument that the charge implied his guilt is totally unfounded. Neither is there any reason to declare the instructions on character evidence to be in error. In addition, the instructions were agreed upon by the parties before being given.

4. The evidence presented on the elements of first-degree murder in the perpetration or attempted perpetration of rape was sufficient so that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The defendant and the victim were last seen sleeping on separate couches in the same room. The victim was found to be dead shortly after that with lacerations, stab wounds and a badly fractured skull. Two abrasions were discovered on the victim's labia minora, which was consistent with forced penetration of the vagina. The condition of the room demonstrated that there had been a tremendous struggle. The victim's 10-year-old brother had heard an angry voice shouting obscenities and another voice crying. Defendant was found unconscious in a field an hour and a half after the murder was discovered, with blood on his clothing and bite marks on his left hand. His fingerprint was found on a broken leg of a stool in another room, and he later admitted involvement in the murder. After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Affirmed.

86 Mich App 5; 272 NW2d 179 (1978) affirmed.

1. Homicide — First-Degree Murder — Rape.

  The term "rape", as used in the first-degree murder statute, was intended to include conduct originally proscribed at common law and codified by the Legislature in statutes which basically incorporated the common-law definition of the crime in the crime called carnal knowledge of a female (MCL 750.316; MSA 28.548).

2. Homicide — First-Degree Murder — Rape — Carnal Knowl-
   edge.

  The conduct proscribed in the former statute defining carnal knowledge of a female continued to control the definition of rape as to first-degree murder in the perpetration of or attempt to perpetrate rape absent express legislative action to amend the first-degree murder statute to make it conform to the new criminal sexual conduct act; the first-degree murder statute is a separate one which punishes conduct under its own provisions

(MCL 750.316, 750.520, 750.520a *et seq.;* MSA 28.548, 28.788, 28.788[1] *et seq.).*

3. RAPE — CRIMINAL SEXUAL CONDUCT — CARNAL KNOWLEDGE.

The criminal sexual conduct statute, although it enlarges the scope of criminal sexual conduct over that proscribed by the former carnal knowledge statute, continues the historic prohibition of rape; the conduct proscribed as rape continues to exist in a form sufficient to apprise persons of the behavior proscribed (MCL 750.520, 750.520a *et seq.;* MSA 28.788, 28.788[1] *et seq.).*

4. HOMICIDE — FIRST-DEGREE MURDER — RAPE — CARNAL KNOWLEDGE — NOTICE.

There was no error in charging a defendant and instructing the jury under the former first-degree murder and rape statutes, before the first-degree murder statute had been amended to make it conform to the new criminal sexual conduct statute which repealed the rape statute; the defendant was provided with adequate notice of conduct for which he was subject to punishment because the passage of the criminal sexual conduct statute did not affect the concept of rape in the first-degree murder statute (MCL 750.316, 750.520, 750.520a *et seq.;* MSA 28.548, 28.788, 28.788[1] *et seq.).*

5. CONSTITUTIONAL LAW — EQUAL PROTECTION — STATUTES.

Courts reviewing a claim that a statutory classification drawn on the basis of sex violates the Equal Protection Clause must determine whether the classification distinguished by the statute is reasonable and rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike (US Const, Am XIV; Const 1963, art 1, § 2).

6. RAPE — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The common-law definition of rape in the former rape statute as the carnal knowledge of a female draws statutory distinctions, between the classes of male and female defendants, which are physiologically different in a way which has a fair and substantial relation to the object of the legislation; even under the proposed Equal Rights Amendment to the Constitution of the United States statutes proscribing rape by males would remain constitutionally defensible because they are based on a biological fact unique to males (US Const, Am XIV; Const 1963, art 1, § 2; MCL 750.520; MSA 28.788).

7. HOMICIDE — FIRST-DEGREE MURDER — RAPE — CARNAL KNOWL-
EDGE — EQUAL PROTECTION.

The use of the common-law definition of rape, which applied only
to male defendants, in the first-degree murder statute until it
was amended in 1980 to conform to the criminal sexual conduct
statute, does not violate the Equal Protection Clause; the
Legislature was justified in isolating and treating as criminal
such behavior by males because it presents a substantial crimi-
nal problem for society which is not equally the case for rape
by women, the classification rests upon differences which have
a substantial relation to the important governmental object
advanced by the legislation, and the Legislature apparently
believed the act of rape to be an inherently dangerous crime
which justified its inclusion in the first-degree murder statute
(US Const, Am XIV; Const 1963, art 1, § 2; MCL 750.316,
750.520, 750.520a *et seq.;* MSA 28.548, 28.788, 28.788[1] *et seq.).*

8. HOMICIDE — FIRST-DEGREE MURDER — RAPE — SUFFICIENCY OF
EVIDENCE.

The evidence presented on the elements of first-degree murder in
the perpetration or attempt to perpetrate rape was sufficient so
that any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt where the
defendant and the victim were last seen sleeping on two
couches in the same room, the victim was found to be dead
shortly after that with lacerations, stab wounds, a badly frac-
tured skull and two abrasions on her labia minora which were
consistent with forced penetration of the vagina, the condition
of the room demonstrated that there had been a tremendous
struggle, the victim's 10-year-old brother had heard an angry
voice shouting obscenities and another voice crying, the defen-
dant was found, one and one-half hours after the murder was
discovered, unconscious in a field, with blood on his clothing
and bite marks on his left hand, his fingerprint was found on a
broken leg of a stool in another room, and he later admitted
involvement in the murder (MCL 750.316, 750.520; MSA 28.548,
28.788).

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Timothy A. Baugh-
man,* Assistant Prosecuting Attorney, for the peo-
ple.

*Carl Ziemba* for defendant.

BLAIR MOODY, JR., J. On June 27, 1976, Virginia Marie Kania was found dead of multiple stab wounds. The evidence indicated that the victim was babysitting at the home of Julie Fields. The defendant, Lee Arthur McDonald, and others were attending a party there. Some evidence existed that alcohol and narcotics were consumed by the persons at the party. In the early hours of the morning, most of the guests left the house to have breakfast. Defendant and the victim remained. The evidence indicated they were asleep on two different couches located in the same room.

Sometime later, the victim was discovered dead in the backyard of the Fields' residence. It appeared she had been raped. From the condition of the interior of the house and the injuries sustained by the victim, it was apparent that a violent struggle had occurred. Over an hour later, defendant was found unconscious in a field. He had blood stains on his clothing and bite marks on his left hand. During an interview at the police station, defendant made an incriminating statement. This statement was admitted into evidence at trial following a *Walker* hearing.[1] Defendant McDonald was prosecuted for murdering the victim during the perpetration or attempted perpetration of a rape. He was found guilty of first-degree murder but mentally ill by a Wayne County jury. MCL 768.36, 750.316; MSA 28.1059, 28.548. He was sentenced to life imprisonment. On appeal to the Court of Appeals, his conviction was affirmed. 86 Mich App 5; 272 NW2d 179 (1978). We granted defendant's application for leave to appeal. 406 Mich 1009 (1979).

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

Defendant raises several questions for our consideration. In particular, this Court directed the parties to address the issue of whether a first-degree murder conviction can be based on the commission of a murder during the perpetration or attempted perpetration of a "rape" after the recent simultaneous repeal of the carnal knowledge statute, MCL 750.520; MSA 28.788, and the enactment of the criminal sexual conduct law, MCL 750.520a *et seq.;* MSA 28.788(1) *et seq.*

Defendant argues that because the former statute punishing rape was repealed and replaced by the present statute punishing criminal sexual conduct the offense known as rape no longer exists. As a result, the crime of first-degree murder based on rape could not properly be charged in an information. We are not persuaded by this argument.

We find the Legislature intended that the repealed carnal knowledge statute define rape for purposes of the first-degree murder statute. The conduct proscribed by the former carnal knowledge statute upon which a first-degree murder conviction was based is also presently prohibited under the criminal sexual conduct act. Consequently, the Legislature did not intend to abrogate such conduct as an aggravating circumstance required for first-degree murder. Rape, as formerly defined under the carnal knowledge law, survives for purposes of prosecution under the first-degree murder statute. We find no merit to the other issues raised by the defendant. We therefore affirm the Court of Appeals.

I

The first-degree murder statute in Michigan provided the following:

"All murder * * * which shall be committed in the perpetration, or attempt to perpetrate any arson, *rape,* robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree". MCL 750.316; MSA 28.548. (Emphasis added.)

This statute with its inclusion of the criminal act of rape has existed in one form or another since 1837. See 1838 RS pt 4, tit 1, ch 3, § 1.[2] The crime of rape has likewise been part of Michigan statutory law since 1837. At that time, the common-law definition was adopted as the statutory standard. See *id.,* § 15.[3] Underlying the criminal statutes of this state is the common law. See, generally, Const 1963, art 3, § 7;[4] MCL 750.505; MSA 28.773.[5] See also *Bugbee v Fowle,* 277 Mich 485, 492; 269 NW 570 (1936).

The statutory codification proscribing rape which existed immediately prior to the present

---

[2] This provision read as follows:

"All murder which shall be perpetrated by means of poison or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, *rape,* robbery, or burglary, shall be deemed murder of the first degree, and shall be punished by death; and all other kinds of murder shall be deemed murder of the second degree, and shall be punished by confinement in the penitentiary for life, or any term of years, at the discretion of the court trying the same." (Emphasis added.)

[3] This provision read as follows:

"If any person shall ravish and carnally know any female, of the age of ten years or more, by force and against her will, or shall unlawfully and carnally know and abuse any female child under the age of ten years, he shall be punished by imprisonment in the state prison for life."

[4] This section of article 3 reads as follows:

"The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

[5] This statute provides for prosecution of common-law crimes as follows:

"Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court."

criminal sexual conduct statute was enacted in 1931. See 1931 PA 328, § 520. This enactment, known as the "carnal knowledge" statute, basically recodified what had been in effect under prior law. In pertinent part this provision reads as follows:

> "Any person who shall ravish and carnally know any female of the age of 16 years, or more, by force and against her will, or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony * * *. Such carnal knowledge shall be deemed complete upon proof of any sexual penetration however slight." MCL 750.520; MSA 28.788.

This statute continued to incorporate the common-law definition of rape—"the carnal knowledge of a woman by force and against her will". See *People v Crosswell,* 13 Mich 427, 432 (1865); *Moran v People,* 25 Mich 356, 359 (1872). Statutory evolution raised the age of consent from 10 to 16 years. For an account of the development of this statute, see 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), §§ 2175-2181.

Accordingly, at the time the first-degree murder statute was last recodified in 1931, the conduct historically known as rape was prohibited by the carnal knowledge statute. As it exists in the first-degree murder statute, we are convinced that the term "rape" was intended to encompass the course of conduct originally proscribed at common law and subsequently codified and slightly altered by various statutes through the years.

Even though the provisions of the carnal knowledge statute were replaced by the present criminal sexual conduct statute, the first-degree murder statute and its included designation of rape were

in no way altered.[6] Absent express legislative action to amend the first-degree murder statute, the definition of "rape" as the proscribed conduct used by trial judges since the last codification of felony murder in 1931 continued in force.

Defendant was not tried and convicted of rape, but of first-degree murder committed in the perpetration or attempted perpetration of rape. The new criminal sexual conduct statute, while enlarging the scope of sexual activity proscribed by its terms, continues the historic prohibition of the conduct for which defendant was prosecuted under the first-degree murder statute. MCL 750.520b, 750.520d; MSA 28.788(2), 28.788(4).[7] We therefore

[6] Although an initial proposal relative to criminal sexual conduct legislation, recommended revision of other existing statutes, including the first-degree murder statute, MCL 750.316; MSA 28.548, none of the preliminary or final drafts contained language regarding such revision. Senate Bill No. 1207 of 1974; 2 Michigan Senate J (1974) 963-965; 1974 PA 266. It might thus be concluded that when the criminal sexual conduct statute was enacted the Legislature did not intend to repeal or affect the existing use of the carnal knowledge statute to define rape in the first-degree murder statute.

[7] These provisions read as follows:

"Sec. 520b. (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

"(a) That other person is under 13 years of age.

"(b) The other person is at least 13 but less than 16 years of age and the actor is a member of the same household as the victim, the actor is related to the victim by blood or affinity to the fourth degree to the victim, or the actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

"(c) Sexual penetration occurs under circumstances involving the commission of any other felony.

"(d) The actor is aided or abetted by 1 or more other persons and either of the following circumstances exists:

"(i) The actor knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

"(ii) The actor uses force or coercion to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in subdivision (f)(i) to (v).

"(e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

"(f) The actor causes personal injury to the victim and force or

cannot accept the assertion that defendant was tried for a crime not cognizable under the laws of Michigan. Conduct proscribed as "rape" is presently defined and has been defined throughout the state's history in a form sufficient to apprise persons in defendant's position of proscribed criminal behavior. This defendant was thus provided adequate notice of conduct for which he was subject to punishment.

We therefore do not hesitate to hold that the passage of the present criminal sexual conduct

coercion is used to accomplish sexual penetration. Force or coercion includes but is not limited to any of the following circumstances:

"(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

"(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

"(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, 'to retaliate' includes threats of physical punishment, kidnapping, or extortion.

"(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

"(v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

"(g) The actor causes personal injury to the victim, and the actor knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless.

"(2) Criminal sexual conduct in the first degree is a felony punishable by imprisonment in the state prison for life or for any term of years."

"Sec. 520d. (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exists:

"(a) That other person is at least 13 years of age and under 16 years of age.

"(b) Force or coercion is used to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (v).

"(c) The actor knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless.

"(2) Criminal sexual conduct in the third degree is a felony punishable by imprisonment for not more than 15 years."

statute and repeal of the former carnal knowledge statute did not affect the concept of rape in the first-degree murder statute. The first-degree murder statute is a separate statute which punishes a course of conduct defined under its provisions.

It is to be noted that the first-degree murder statute has now been amended by the Legislature so as to conform to the new criminal sexual conduct law. See 1980 PA 28, amending MCL 750.316; MSA 28.548, effective March 7, 1980.[8] In this case, however, which is controlled by the prior law, it was appropriate to use as the definition of rape the one previously used by trial judges. According to the elements required under that definition, the instruction given at defendant's trial was sufficient.[9]

We thus conclude that no statutory charging error occurred in the prosecution of this case for murder committed during the perpetration or attempted perpetration of a rape.

---

[8] As presently constituted the first-degree murder statute reads as follows:

"Murder which is perpetrated by means of poison, lying in wait, or wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life."

[9] The trial court gave the following jury instruction relative to rape:

"Now for the crime of rape, the prosecution must prove each of the following elements beyond a reasonable doubt.

"Now as used in this case, a male person perpetrates a rape if he engages in sexual penetration with a female person under circumstances in which force or coercion is used to accomplish the sexual penetration.

"As used in this case, sexual penetration means any intrusion however slight of a male penis into the genital opening of a female's body but emission of semen is not required.

"The term force and coercion means the actual physical force by the defendant or any action sufficient to create a reasonable fear of dangerous consequences."

## II

Defendant also argues that he was denied constitutional equal protection as a male by being prosecuted for rape under the first-degree murder statute because Michigan now recognizes that women as well as men can commit conduct constituting criminal sexual conduct, but only men could be charged with first-degree murder committed in the perpetration or attempted perpetration of a rape. See US Const, Am XIV; Const 1963, art 1, § 2. When reviewing an allegedly unconstitutional distinction drawn on the basis of sex, we must determine whether the classification distinguished by the statute is reasonable and rests "upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike". *Reed v Reed,* 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971), quoting from *F S Royster Guano Co v Virginia,* 253 US 412, 415; 40 S Ct 560; 64 L Ed 989 (1920). See also *Craig v Boren,* 429 US 190, 197; 97 S Ct 451; 50 L Ed 2d 397 (1976); *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 670-671; 232 NW2d 636 (1975).

What defendant claims here is that defining rape as it had previously been defined in the carnal knowledge statute rather than defining rape as conduct proscribed by the criminal sexual conduct act, means that instances may arise which would create a distinction based on sex. Defendant as a male may be prosecuted for murder in cases where a female committing the same act may not be prosecuted. This potential exists due to the extended reach of the present criminal sexual conduct statute. For example, a woman may now be prosecuted for criminal sexual conduct involving forced fellatio, cunnilingus, or insertion of an

object or body part into the vagina of a woman or rectum of a man or woman. Such conduct could not be prosecuted as to a woman under the first-degree murder statute.

Defendant is correct in isolating this distinction. However, if the classification as drawn in the first-degree murder statute violates equal protection, then most rape laws violate equal protection. This position has been rejected in various other jurisdictions, both Federal and state. See, *e.g., Moore v Cowan,* 560 F2d 1298 (CA 6, 1977); *State v Kelly,* 111 Ariz 181; 526 P2d 720 (1974), *cert den* 420 US 935; 95 S Ct 1143; 43 L Ed 2d 411 (1975). Even under the Equal Rights Amendment, statutes proscribing rape by males would remain defensible because they are based on a biological fact unique to males. See Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale LJ 871, 954-961 (1971). The classes drawn are physiologically different and equal treatment is thus not constitutionally required. Further, rape by males presents a significant criminal problem in our society. This is not equally true of rape by women. The Legislature was justified in isolating and applying criminal sanctions to such behavior. The classification involved rests upon differences which have a substantial relation to the important governmental object advanced by the legislation. See *Craig v Boren, supra,* 429 US 197; *Manistee Bank & Trust Co v McGowan, supra,* 671. See also *State v Witt,* 310 Minn 211, 215-218; 245 NW2d 612, 616-617 (1976).

Apparently, the Legislature believed the act of rape an inherently dangerous crime which justified inclusion in the statute. See *People v Pavlic,* 227 Mich 562; 199 NW 373 (1924); *People v Carter,*

387 Mich 397, 422; 197 NW2d 57 (1972). We see no arbitrary classification. *Reed v Reed, supra,* 404 US 76; *Manistee Bank & Trust Co v McGowan, supra,* 671.

## III

As to defendant's other claims of error, we find no reversible error in the trial court's unobjected-to instruction that the people must prove beyond a reasonable doubt the victim's death was "caused by an act of the defendant or that he consciously created a very high degree of risk of death for another with the knowledge that it probably would cause death". The implication of guilt defendant perceives in the charge—that the court considered it proven that the defendant killed the deceased—is totally unfounded.

Neither do we find the unobjected-to instruction on character evidence erroneous.[10] The instructions were mutually agreed upon by the parties before being read to the jury. No reason is shown to declare this instruction to be in error.

Finally, as to the sufficiency of the evidence presented on the elements of first-degree murder in the perpetration or attempted perpetration of rape, we are convinced that "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt". *Jackson v Virginia,* 443 US 307, 318; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

---

[10] The trial court instructed the jury in part as follows:

"Now the law recognizes that a person of good character is not likely to commit a crime which is contrary to his nature. Evidence of good character may by itself create a reasonable doubt and justify a verdict of not guilty.

\*  \*  \*

"However, if the evidence of good character along with all the other evidence in the case creates a reasonable doubt of the defendant's guilt, then you must find him not guilty."

Defendant and the victim were last seen together, sleeping on separate couches in the same room of Julie Fields' Romulus residence. The victim was found dead shortly afterward with multiple lacerations, stab wounds and a badly fractured skull. Two abrasions were discovered on the victim's labia minora, which testimony indicated was consistent with forced penetration of the vagina. A tremendous struggle was demonstrated by the condition of the room where the two were last seen. The victim's 10-year-old brother had heard an angry voice shouting obscenities and another voice crying. Defendant was found unconscious in a field an hour and a half after the murder was discovered with blood on his clothing and bite marks on his left hand. Defendant's fingerprint was lifted from a broken plastic leg of a piece of furniture found in a room in the Field's residence. During interrogation, defendant admitted involvement in the murder. We thus find that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *Jackson v Virginia, supra.*

Consequently, having considered defendant's various allegations of error and finding a sound basis for the jury's conviction, we affirm the decision of the Court of Appeals.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and LEVIN, JJ., concurred with BLAIR MOODY, JR., J.