Marilyn Kelly, J.
(dissenting). At issue in this case is whether a larceny must be completed before a criminal defendant may be convicted of armed robbery. The majority concludes that a completed larceny is not necessary to sustain a conviction for that crime. Because I disagree with its conclusion, I respectfully dissent.
factual background and procedural history
In 2006, a man matching defendant’s description entered a gas station in Norton Shores and announced to the station attendant that he had a gun. He demanded all the money in the register. After the attendant complied, the man fled.
The next day, defendant entered a Muskegon County tobacco store. The store clerk was standing behind the cash register. With his hand inside his jacket, defendant announced to the clerk, “[Y]ou know what this is, just give me what I want.” However, the clerk did not give defendant money, and defendant fled without stealing *185 anything. Defendant allegedly broke his leg while in flight, and the police apprehended him later that day. The arresting officers noted that defendant was dressed in the same clothing worn by the man who had robbed the gas station the previous day.
In the information, defendant was charged with armed robbery of the gas station. He was also charged with assault with intent to rob while armed and armed robbery of the tobacco store. In exchange for a guilty plea to the tobacco store robbery and a nolo contendere plea to the gas station robbery, the prosecutor dismissed the charge of assault with intent to rob while armed.
At his hearing, defendant stated that he was pleading of his own volition. He said that no promises had been made to induce his pleas, other than a Cobbs[1] agreement for a cap on his minimum sentence. While entering defendant’s pleas on the record, the prosecutor suggested that the court review the tobacco store incident to establish the necessary facts. Defendant admitted that he had entered the store with the intent to steal money and that he held his hand “up under” his coat. He further admitted that he had told the clerk, “[Y]ou know what this is, just give me what I want.” The following exchange ensued:
The Prosecutor: Okay. And it was your intent, at that time, for her to give you the money out of the cash register, is that right?
The Defendant: Yeah.
The Prosecutor: All right.
The Court: Great—
The Prosecutor: And I think that satisfies.
The Court: Great. I think we’re all set on [the tobacco store].
*186 After agreeing that the police report established a sufficient factual basis for the gas station robbery, defendant entered a nolo contendere plea to that charge. The trial court sentenced defendant pursuant to his Cobbs agreement to concurrent terms of imprisonment for 24 to 40 years.
Later, defendant moved to withdraw his pleas, claiming that the factual bases for the charges were insufficient. Specifically, defendant argued that there was no evidence that he had committed a larceny of the tobacco store. He asserted that the police report did not sufficiently identify him as the gas station robber. The trial court denied defendant’s motions. With respect to the tobacco store incident, it ruled that the language of the armed robbery statute[2] allows for a conviction predicated on attempted larceny, which the plea discussions substantiated. With respect to the gas station incident, the court ruled that the entirety of the police report and the statements made at the plea hearing established defendant’s participation in the robbery.
The Court of Appeals granted defendant’s delayed application for leave to appeal, limited to the issue whether a completed larceny was necessary to sustain defendant’s conviction of armed robbery of the tobacco store.[3] The Court of Appeals majority concluded that the statutory language defining robbery and armed robbery encompasses attempted larcenies and that, as a result, a completed larceny is not required to obtain a conviction.[4] Judge GLEICHER dissented and would have reached the opposite conclusion.[5]
*187 We granted defendant’s application for leave to appeal.[6]
STANDARD OF REVIEW AND LEGAL BACKGROUND
Matters of statutory interpretation present questions of law, which we review de novo.[7]
The common law underlies Michigan’s criminal statutes.[8] Indeed, this Court has long held that the common law definition of a crime binds Michigan courts unless and until the Legislature modifies the elements of a crime.[9] Likewise, we recognized in People v Covelesky that “when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown.”[10]
Historically, Michigan’s robbery statutes are derived from the common law crime of robbery. An essential element of the crime included the commission of a larceny.[11] We observed as much in Covelesky, noting that
[r]obbery at common law is defined as the felonious taking of money or goods of value from the person of another or in his presence, against his will, by violence or putting him in *188 fear. This definition has been followed by most of the statutes, and even where the language has been varied sufficiently to sustain, by a literal interpretation, a narrower definition of the offense, it has usually been held that it could not be presumed that the legislature intended to change the nature of the crime as understood at common law.[12]
Thus, at common law, robbery included three elements: (1) a larceny of money or goods of value from a person, (2) against the person’s will, (3) by violence or putting the person in fear. Our Court of Appeals has also long observed that a completed larceny is an essential element of armed robbery.[13]
In People v Randolph,[14] we examined the original version of MCL 750.530 in the Michigan Penal Code, which provided, in relevant part:
Any person who shall, by force or violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony . .. .[15]
The issue in Randolph was whether the crime of robbery set forth in MCL 750.530 was properly viewed by means of a “transactional approach.” Under this approach, an offender is not viewed as having completed a robbery until he or she has escaped with stolen merchandise. Randolph rejected the transac *189 tional approach, holding that if force is used to retain, rather than obtain, property, the crime is outside the scope of MCL 750.530.[16] We further held that, under the common law, the force or violence element of robbery “had to be applied before or during the taking.”[17] We explicitly noted that, after the initial larcenous act has been completed, the use of force against a victim to retain stolen property does not transform the offense into armed robbery.[18] Rather, the force or violence must be used before or contemporaneously with the larceny to elevate the offense to robbery.
In response to our decision in Randolph, the Legislature amended our robbery statutes in 2004.[19] MCL 750.529, the armed robbery provision, now reads in relevant part as follows:
A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.
At the same time, the Legislature also revised the statutory definition of unarmed robbery in MCL 750.530. It did so to clarify the scope of the unlawful conduct proscribed by MCL 750.529, which refers to MCL 750.530. MCL 750.530 now provides:
*190 (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
(2) As used in this section, “in the course of committing a larceny” includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.
Central to the resolution of this case is the definition of “in the course of committing a larceny” in MCL 750.529(2). Specifically, we must consider whether the addition of the phrase “acts that occur in an attempt to commit the larceny” in that definition eliminated the common law requirement of a completed larceny as a prerequisite for an armed robbery conviction.
ANALYSIS
Against this backdrop, the starting point in any statutory interpretation dispute is the language of the relevant statutes.[20] When considering the correct statutory interpretation, statutory language must be read as a whole.[21] “Individual words and phrases, while important, should be read in the context of the entire legislative scheme.”[22] Furthermore, “ ‘the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.’ ”[23]
*191 As Judge GLEICHER noted in her Court of Appeals dissent, the language of MCL 750.530 refutes the proposition that our robbery statutes allow for conviction without proof of a completed larceny.[24] Under MCL 750.530, a person who “in the course of committing a larceny” uses force or violence, puts in fear, or assaults another is guilty of a felony. The statutory phrase “in the course of committing a larceny” includes “acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission or the larceny, or in an attempt to retain possession of the property.”
Through this language, the Legislature explicitly indicated that the use of force or violence at any time during the commission of a larceny subjects offenders to prosecution for armed robbery. Hence, “the Legislature intended to expand the temporal scope of the crime. . . .”[25] The language it chose merely reflects its rejection of Randolph. It does not eliminate the requirement of an actual larceny.
The House legislative analysis of HB 5015, which became 2004 PA 128, also supports my conclusion that the Legislature did not intend to abrogate the common law requirement of a completed larceny to sustain a robbery conviction. That analysis described our decision in Randolph as the problem that HB 5105 would rectify. It indicated that the bill would eliminate Randolph’s holding that applied only to those acts in which force was used to accomplish a larceny.[26] The section describing the contents of the bill indicated that it would expand the crime of armed robbery. The crime would include a person who, in the course of engaging *192 in the proscribed conduct, “represented orally or otherwise that he or she was in possession of a dangerous weapon.”[27]
The arguments for HB 5015 summarized in the House legislative analysis further illustrate the bill’s purpose. For example, one such argument for the bill stated:
Currently, a charge of robbery can only be made if force or violence were used to commit the larceny. Revising the statutes will allow prosecutors more latitude to prosecute similar crimes in similar ways. For example, under the recent court interpretation of the robbery laws, it would be a crime of armed robbery if a gun were brandished immediately before or while property was being taken. However, it would not be a crime of armed robbery if the gun was not brandished until the suspect was trying to evade capture by a security guard or passerby. The bill would revise the state’s robbery statutes to include any crime of larceny that involved the use of force or violence, or fear, at any time during the commission of the crime. Therefore, if force or violence were used to take property, to retain property, or to evade apprehension after taking property, the act could constitute robbery.[28]
A second argument in support of the bill stated:
Before the 2002 state supreme court decision interpreted the robbery statutes as applying only in those cases in which force or violence were used in the taking of property, the state’s appellate courts were moving towards what is known as the “transactional approach” .... Even though this approach included as robbery some acts that would not be considered robbery under the Randolph decision, it still is problematic. For example, say property is taken from a convenience store without force, but force is used to keep possession of the stolen property or in an attempt to flee from *193 a security guard or police officer. Under the transactional approach, the crime would be elevated to robbery if the suspect escaped apprehension and attained temporary safety hut would not be robbery if the suspect were apprehended by the security guard or police officer because that means he or she had never attained temporary safety. Moreover, the current law reflects the mindset of the early 1830s, whereas the bill is similar to revisions other states have made that include not only the actual taking or larceny as the crime of robbery, but also those acts committed in trying to keep possession of the property and acts committed in trying to escape apprehension.[29]
These arguments make clear that the revisions of the robbery statutes were intended to elevate to robbery any completed larceny that included force before, during, or after the taking. They explicitly indicate that a completed larceny remains part of a robbery. The Legislature was merely displeased with Randolph and enacted legislation to allow for an enhanced charge of robbery when a larcenist employs force.
While the language of the House legislative analysis provides an understanding of the Legislature’s intentions, equally telling is what is lacking from that analysis. Nowhere in the public act or the House legislative analysis is there any indication that the Legislature intended to abrogate the common law requirement that a robbery include a completed larceny. Although the Legislature has the authority to set aside the common law, it has long been recognized that “[w]hen it does so, it should speak in no uncertain terms.”[30] In 2004 PA 128, there are no “terms,” let alone “uncertain” ones, that support the conclusion *194 that a completed larceny is no longer an element of robbery.[31]
Therefore, robbery still requires a completed larceny as a predicate to conviction. The majority’s conclusion to the contrary defies the statutory language as well as the Legislature’s intent.
THE MAJORITY OBLITERATES THE DISTINCTION BETWEEN ARMED ROBBERY AND ASSAULT WITH INTENT TO ROB AND STEAL WHILE ARMED
A further indication that the majority’s statutory interpretation is incorrect is that it effectively writes *195 out of existence the crime of assault with intent to rob and steal while armed. In this regard, MCL 750.89 provides:
Assault with intent to rob and steal being armed — Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.
Thus, a person violates MCL 750.89 if he or she intends to rob another while in possession of a weapon but fails and a completed larceny does not occur.
Under the majority’s flawed analysis, the armed robbery statute, MCL 750.529, is now nearly identical to assault with intent to rob and steal while armed, MCL 750.89. Indeed, a defendant may now be convicted of armed robbery if (1) while armed with a dangerous weapon or any article used or fashioned in a manner to lead a person to believe it to be a dangerous weapon, (2) he or she assaults another with intent to rob and steal. There is no longer a distinction between armed robbery and assault with intent to rob and steal while armed. Yet the Legislature saw fit to draw a distinction between the two crimes by requiring a completed larceny for armed robbery, not merely an intended one. Otherwise, there would be no purpose to having two discrete statutes on the books.
The majority’s analytical mistake is made clear when reference is made to our criminal jury instructions. When a defendant is charged with armed robbery, trial courts instruct the jury as follows:
(1) The defendant is charged with the crime of armed robbery. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
*196 (2) First, the defendant [used force or violence against / assaulted / put in fear] [state complainant’s name].
(3) Second, the defendant did so while [he / she] was in the course of committing a larceny. A “larceny” is the taking and movement of someone else’s property or money with the intent to take it away from that person permanently.
“In the course of committing a larceny” includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property or money.
(4) Third, [state complainant’s name] was present while defendant was in the course of committing the larceny.
(5) Fourth, that while in the course of committing the larceny the defendant:

[Choose one or more of the following as warranted by the charge and proofs:]

(a) possessed a weapon designed to be dangerous and capable of causing death or serious injury; [or]
(b) possessed any other object capable of causing death or serious injury that the defendant used as a weapon; [or]
(c) possessed any [other] object used or fashioned in a manner to lead the person who was present to reasonably believe that it was a dangerous weapon; [or]
(d) represented orally or otherwise that [he / she] was in possession of a weapon![32]
When a defendant is charged with assault with intent to rob and steal while armed, trial courts instruct the jury as follows:
(1) The defendant is charged with the crime of assault with intent to commit armed robbery. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
*197 (2) First, that the defendant assaulted [name complainant]. There are two ways to commit an assault. Either the defendant must have attempted or threatened to do immediate injury to [name complainant], and was able to do so, or the defendant must have committed an act that would cause a reasonable person to fear or apprehend an immediate injury.
(3) Second, that at the time of the assault, the defendant was armed with:

[Choose one or more of the following:]

(a) A weapon designed to be dangerous and capable of causing death or serious injury; [or with]
(b) Any [other] object capable of causing death or serious injury that the defendant used as a weapon; [or with]
(c) Any [other] object used or fashioned in a manner to lead the person who was assaulted to reasonably believe that it was a dangerous weapon.
(4) Third, that at the time of the assault the defendant intended to commit robbery. Robbery occurs when a person assaults someone else and takes money or property from [him / her} or in [his / her} presence, intending to take it from the person permanently. It is not necessary that the crime be completed or that the defendant have actually taken any money or property. However, there must be proof beyond a reasonable doubt that at the time of the assault the defendant intended to commit robbery.[33]
The key distinction between armed robbery and assault with intent to rob and steal while armed, as highlighted by the model jury instructions, is whether a larceny is completed. To obtain a conviction, the prosecution must prove in both instances that an offender committed an assault. Likewise, both crimes require proof of the use of a weapon or an object fashioned as a weapon. But assault with intent to rob and steal while armed requires only the intent to commit a robbery; no completed larceny is *198 required under CJI2d 18.3(4). By contrast, armed robbery requires a completed larceny. In fact, CJI2d 18.1(3) explicitly indicates that the prosecution must prove that a defendant “was in the course of committing a larceny” and defines “larceny” as “the taking and movement of someone else’s property....”
As discussed earlier, the Legislature is “ ‘presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.’ ”[34] Yet under today’s decision, the majority has usurped the Legislature’s statutory distinction between armed robbery and assault with intent to rob while armed. In essence, it has merged the two offenses into one. Had the Legislature intended to eliminate the crime of assault with intent to rob while armed when it enacted 2004 PA 128, it could have explicitly done so. It did not. The majority offers no response when confronted with this significant analytical flaw.
Applying my analysis to this case, I believe that the trial court abused its discretion by denying defendant’s motion to withdraw his plea.[35] There is no evidence that defendant committed a larceny at the tobacco store, and therefore there is an inadequate factual basis to support a finding that defendant is guilty of armed robbery. Therefore, I would reverse the judgment of the Court of Appeals.
CONCLUSION
I dissent from the majority’s holding that a completed larceny is no longer necessary to sustain a *199 conviction for armed robbery. The Legislature did not provide a clear indication that it wished to depart from the common law. Accordingly, I would reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings.
CAVANAGH and HATHAWAY, JJ., concurred with MARILYN Kelly, J.

 People v Cobbs, 443 Mich 276; 505 NW2d 208 (1993).

 MCL 750.529.

 People v Williams, unpublished order of the Court of Appeals, entered June 16, 2008 (Docket No. 284585).

 People v Williams, 288 Mich App 67; 792 NW2d 384 (2010).

 Id. at 91 (Gleicher, J., dissenting).

 People v Williams, 489 Mich 856 (2011).

 People v Thompson, 477 Mich 146, 151; 730 NW2d 708 (2007).

 Const 1963, art 3, § 7; see also People v McDonald, 409 Mich 110, 117; 293 NW2d 588 (1980).

 See, e.g., People v Perkins, 468 Mich 448, 455; 662 NW2d 727 (2003); People v Riddle, 467 Mich 116, 126; 649 NW2d 30 (2002); People v Schmitt, 275 Mich 575, 577; 267 NW 741 (1936); People v Utter, 217 Mich 74, 86; 185 NW 830 (1921).

 People v Covelesky, 217 Mich 90, 100; 185 NW 770 (1921).

 A “larceny” is an “unlawful taking and carrying away of someone else’s personal property with the intent to deprive the possessor of it permanently.” Black’s Law Dictionary (9th ed).

12 Covelesky, 217 Mich at 96-97 (emphasis added; citation and quotation marks omitted).

 See, e.g., People v Needham, 8 Mich App 679, 683; 155 NW2d 267 (1967), citing 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2218, pp 2241-2242.

 People v Randolph, 466 Mich 532; 648 NW2d 164 (2002).

15 As enacted by 1931 PA 328.

 Randolph, 466 Mich at 541-543.

 Id. at 538.

 Id. at 543.

 2004 PA 128.

 Briggs Tax Serv, LLC v Detroit Pub Schs, 485 Mich 69, 76; 780 NW2d 753 (2010).

 Bush v Shabahang, 484 Mich 156, 167; 772 NW2d 272 (2009).

 Id.

 People v Feezel, 486 Mich 184, 211; 783 NW2d 67 (2010), quoting Walen v Dep’t of Corrections, 443 Mich 240, 248; 505 NW2d 519 (2003).

 Williams, 288 Mich App at 96-97 (Gleicher, J., dissenting).

 Id. at 97.

 House Legislative Analysis, HB 5015, February 12, 2004, p 1.

 Id.

28 Id. at 2 (emphasis added).

29 Id. at 2-3 (emphasis added).

 Hoerstman Gen Contracting v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006); see also Bandfield v Bandfield, 117 Mich 80, 82; 75 NW 287 (1898).

 By fiat, the majority announces that the Court has rejected my “resort to unauthoritative legislative analyses in order to displace statutory language.” Ante at 178. Indeed, both cases the majority cites for this proposition are merely the personal preferences of then Justice Young and the justices subscribing to his interpretive methods. But those methods are not binding on other justices of the Court. To be clear, I reject the notion that my brethren may hamstring the manner in which I engage in statutory interpretation. While the majority may prefer to ignore these interpretive aids, I do not. Nor am I alone. As Justice Steyens of the United States Supreme Court stated:
In refusing to examine the legislative history that provides a clear answer to the question whether Congress intended the scope of the mineral reservations in these two statutes to be identical, the plurality abandons one of the most valuable tools of judicial decisionmaking. As Justice Aharon Barak of the Israel Supreme Court perceptively has explained, the “minimalist” judge “who holds that the purpose of the statute may be learned only from its language” retains greater discretion than the judge who “will seek guidance from every reliable source.” Judicial Discretion 62 (Y. Kaufmann transl.1989). A method of statutory interpretation that is deliberately uninformed, and hence unconstrained, increases the risk that the judge’s own policy preferences will affect the decisional process.
BedRoc Ltd, LLC v United States, 541 US 176, 192; 124 S Ct 1587; 158 L Ed 2d 338 (2004) (Stevens, J., dissenting); see also In re Certified Question from the United States Court of Appeals for the Sixth Circuit (Kenneth Henes v Continental Biomass), 468 Mich 109, 119; 659 NW2d 597 (2003) (Cavanagh, J., concurring), and Frank W Lynch & Co v Flex Technologies, Inc, 463 Mich 578, 588; 624 NW2d 180 (2001) (Kelly, J., concurring).

32 CJI2d 18.1.

33 CJI2d 18.3 (emphasis added).

 Feezel, 486 Mich at 211, quoting Walen, 443 Mich at 248.

 See People v Watkins, 468 Mich 233, 238; 661 NW2d 553 (2003) (“Before accepting a guilty plea, a trial court must question the defendant to ascertain whether there is support for a finding that the defendant is guilty of the offense to which he is pleading guilty.”).