**Lansing, Michigan**

# Opinion

Chief Justice:            Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                       Marilyn Kelly
                       Stephen J. Markman
                       Diane M. Hathaway
                       Mary Beth Kelly
                       Brian K. Zahra

FILED MAY 15, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                    No. 141161

GLENN TERRANCE WILLIAMS,

     Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

Defendant appeals here his conviction of armed robbery. In particular, defendant argues that because he was unsuccessful in feloniously taking or removing any actual property from the intended target of his robbery, there was not a sufficient factual basis to support his guilty plea to the charge of armed robbery. We disagree. When the Legislature revised the robbery statute, MCL 750.530, to encompass a "course of conduct" theory of robbery, it specifically included "an attempt to commit the larceny" as sufficient to sustain a conviction for robbery itself. We conclude that this amendment

effectuated a substantive change in the law governing robbery in Michigan such that a completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery.

## I. FACTS AND PROCEDURAL HISTORY

On July 13, 2006, defendant entered a gas station, declared that he had a gun, and ordered the attendant to give him all the money in the cash register. After the attendant complied, defendant forced the attendant into a back room and fled the scene with approximately $160 in stolen cash. The next day, defendant entered a tobacco shop, approached the clerk with his hand in his jacket, and stated, "You know what this is, just give me what I want." The clerk did not give defendant any money or property, and defendant fled from the store without having stolen anything. Defendant was apprehended later that day by the police.

The prosecutor charged defendant with armed robbery[1] of the gas station and, in a separate information, charged defendant alternatively with assault with intent to rob while armed[2] and armed robbery for the events related to the tobacco shop. Defendant elected to plead guilty in both cases. At defendant's plea hearing, the prosecutor advised that he would dismiss the charge of assault with intent to rob while armed in the tobacco shop case in return for defendant's guilty plea to armed robbery.

---

[1] MCL 750.529.

[2] MCL 750.89.

2

After advising defendant of his options and constitutional rights, the circuit court established a factual basis for the plea relating to the incident that occurred at the tobacco shop. Under questioning by the prosecutor, defendant admitted that he had entered the tobacco shop with the intent to steal money, had his hand "up under" his coat, and told the clerk, "You know what this is, just give me what I want." Defendant further admitted that "it was [his] intent, at that time, for [the clerk] to give [him] the money out of the cash register." The court accepted defendant's guilty plea.[3] On February 9, 2007, the court sentenced defendant pursuant to a plea entered in accordance with *People v Cobbs*[4] to concurrent prison terms of 24 to 40 years for the tobacco shop and gas station robberies.

Defendant subsequently moved to withdraw his pleas, contending that an adequate factual basis did not exist to support either conviction. Pertinent here, defendant argued that there was no evidence that he had taken or removed any property from the tobacco shop and that, absent a completed larceny, he could not be found guilty of armed robbery. The circuit court denied defendant's motions. The court ruled that the language of the armed robbery statute as amended in 2004 allows for a conviction based on an attempted

---

[3] Defendant also entered a *nolo contendere* plea with regard to the gas station robbery.

[4] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993). Defendant and the court agreed that defendant's minimum sentence would not exceed 24 years.

3

larceny, a basis that the plea discussions substantiated.[5] The Court of Appeals granted

defendant's delayed application for leave to appeal, limited to the issue whether a factual

basis existed for his conviction of the tobacco store robbery.[6]

In a split decision, the Court of Appeals affirmed.[7] The majority acknowledged

that while at common law a robbery required a completed larceny, the crimes of robbery

and armed robbery now encompass attempts to commit those offenses following the 2004

statutory amendments. The dissenting judge argued that when the 2004 revisions are

viewed through the "lens of common-law definitions," there is inadequate support for the

conclusion that the armed robbery statute would permit a conviction without an

accomplished larceny.[8]

We granted defendant's application for leave to appeal to determine "whether a

larceny needs to be completed before a defendant may be convicted of armed robbery."[9]

---

[5] The circuit court also denied defendant's motion to withdraw his *nolo contendere* plea with regard to the gas station robbery, holding that the plea proceeding and the police report established a sufficient factual basis for the plea.

[6] *People v Williams*, unpublished order of the Court of Appeals, entered June 16, 2008 (Docket No. 284585).

[7] *People v Williams*, 288 Mich App 67; 792 NW2d 384 (2010).

[8] *Id.* at 91, 93 (GLEICHER, J., dissenting).

[9] *People v Williams*, 489 Mich 856 (2011).

## II. STANDARD OF REVIEW

This appeal concerns the proper interpretation of MCL 750.529 and MCL 750.530 and, in particular, whether the Legislature intended to remove the completed larceny requirement from the crime of robbery when it amended those statutes in 2004. Matters of statutory interpretation raise questions of law, which this Court reviews de novo.[10]

## III. THE CRIME OF ROBBERY IN MICHIGAN

In this appeal, we are concerned with the statutes pertaining to robbery, MCL 750.530, and armed robbery, MCL 750.529. At common law, the offense of robbery was defined as "the felonious taking of money or goods of value from the person of another or in his presence, against his will, by violence or putting him in fear."[11] "To constitute robbery, it [was] essential that there be a 'taking from the person.'"[12] Thus, common law robbery required a completed larceny. Armed robbery required the same showing with the additional element that the robber was armed with a dangerous weapon.[13]

The crimes of robbery and armed robbery have been codified by Michigan statute since 1838.[14] All subsequent iterations of the robbery statutes required a completed

---

[10] *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999).

[11] *People v Covelesky*, 217 Mich 90, 96; 185 NW 770 (1921) (citation and quotation marks omitted).

[12] *Id.* at 97 (citation and quotation marks omitted).

[13] *People v Calvin*, 60 Mich 113, 119; 26 NW 851 (1886).

[14] See 1838 RS, pt 4, tit I, ch 3, §§ 10 (armed robbery) and 12 (unarmed robbery).

larceny, consistent with the common law. Before the 2004 amendments, MCL 750.529, defining armed robbery, provided:

> Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony . . . .[15]

In *People v Randolph*, this Court considered the scope of this previous version of the robbery statute and, in particular, whether the Legislature had adopted a "transactional approach" to robbery. Under a transactional theory of robbery, "a defendant has not completed a robbery until he has escaped with stolen [property]. Thus, a completed larceny may be elevated to a robbery if the defendant uses force after the taking and before reaching temporary safety."[16] In *Randolph*, this Court rejected the transactional approach as inconsistent with the plain language of the robbery statutes and common law history of robbery. Instead, we concluded that "the force used to accomplish the taking underlying a charge of unarmed robbery must be contemporaneous with the taking. The force used later to retain stolen property is not included."[17] Therefore, because "a larceny is complete when the taking occurs,"[18] any "force, violence

---

[15] As amended by 1959 PA 71.

[16] *People v Randolph*, 466 Mich 532, 535; 648 NW2d 164 (2002).

[17] *Id.* at 536.

[18] *Id.* at 543.

6

or putting in fear must be used before or contemporaneous with the taking" in order to elevate a larceny to a robbery.[19]

Following this Court's decision in *Randolph*, the Legislature amended the robbery statutes. MCL 750.529, as amended by 2004 PA 128, now provides:

> A person who engages in conduct proscribed under [MCL 750.530, the robbery statute] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

Robbery is defined within MCL 750.530; as amended by 2004 PA 128, it states, in relevant part:

> (1) A person who, *in the course of committing a larceny* of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

> (2) As used in this section, *"in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or* during commission of the larceny, *or* in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.[20]

---

[19] *Id.* at 550.

[20] Emphasis added.

## IV. ANALYSIS

The question before this Court is whether the Legislature intended to remove the element of a *completed* larceny from the crime of robbery when it amended the statutes in 2004. We hold that the Legislature demonstrated a clear intent to remove the element of a *completed* larceny, signaling a departure from Michigan's historical requirement and its common law underpinnings. Accordingly, an attempted robbery or attempted armed robbery with an incomplete larceny is now sufficient to sustain a conviction under the robbery or armed robbery statutes, respectively.

Our analysis begins, as it must, with the language of the robbery statutes themselves. "The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature."[21] This Court may best discern that intent by reviewing the words of a statute as they have been used by the Legislature. When a statute's language is clear and unambiguous, this Court will enforce that statute as written.[22]

The Legislature revised the robbery statute at issue here by removing the prior requirement that a robber feloniously "rob, steal or take" property from another, and it replaced this language with a new statutory phrase: "in the course of committing a larceny." Key to solving the interpretative puzzle presented in this case, the Legislature specifically defined that phrase to include acts that "occur in an attempt to commit the

---

[21] *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011), quoting *Drouillard v Stroh Brewery Co*, 449 Mich 293, 302; 536 NW2d 530 (1995).

[22] *People v Kowalski*, 489 Mich 488, 498; 803 NW2d 200 (2011).

larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property."[23]

The Court of Appeals adopted the prosecution's argument that the statutory language now "specifically considers and incorporates acts taken in an attempt to commit a larceny, regardless of whether the act is completed."[24]  In contrast, defendant and the Court of Appeals dissent argue that the statutory revisions were merely

> intended to expand the temporal scope of the crime [of robbery], transforming it into a transactional offense.  Reading [MCL 750.]530(1) and (2) as a contextual whole, it appears that the Legislature sought to make clear that robbery encompasses acts that occur before, during, and after the larceny, not that the Legislature intended to eliminate larceny as an element of the crime.[25]

In other words, construing "the statutory crime through the lens of common-law definitions,"[26] the Court of Appeals dissent would have held that the Legislature intended to do no more than abrogate this Court's decision in *Randolph*.  For the reasons stated below, we agree with the prosecution and the Court of Appeals majority.

In revising the robbery statutes, the Legislature replaced the "familiar words"[27] of the common law crime of robbery—"rob, steal and take"—with the phrase "in the course of committing a larceny," which the Legislature specifically defined to include "acts that

---

[23] MCL 750.530(2).

[24] *Williams*, 288 Mich App at 75.

[25] *Id.* at 97 (GLEICHER, J., dissenting).

[26] *Id*. at 91.

[27] *Covelesky*, 217 Mich at 100.

occur in *an attempt* to commit the larceny."  The word "attempt" has a well-known common and legal meaning:

> 1. The act or an instance of making an effort to accomplish something, [especially] without success.  2. *Criminal law.*  An overt act that is done with the intent to commit a crime but that falls short of completing the crime.[28]

Particularly in the realm of the criminal law, the word "attempt" is widely used with regard to any type of crime in which a person intends to commit a crime and acts toward its commission but is unsuccessful in its completion.

Indeed, it is inherent in the word "attempt" that the illegal act intended is not accomplished.  Accordingly, the plainest understanding of the phrase "in an attempt to commit the larceny" applies to situations in which a criminal defendant makes "an effort" or undertakes an "overt act" with an intent to deprive another person of his property, but does not achieve the deprivation of property.  The language of this phrase is clear on its face and not ambiguous in the least, and therefore it must be enforced as written, free of any "contrary judicial gloss."[29]

Defendant's alternative interpretation fails to accord this language its plain and ordinary meaning.  Again, defendant argues that the 2004 amendments were merely a legislative response to this Court's decision in *Randolph* and, as such, must be artificially limited to a legislative adoption of the transactional approach to robbery, which *Randolph*

---

[28] Black's Law Dictionary (8th ed).

[29] *Wayne Co v Hathcock*, 471 Mich 445, 456; 684 NW2d 765 (2004) (citation and quotation marks omitted).

had rejected. Defendant contends that the phrase "attempt to commit the larceny" was intended to mean acts done "before" the larceny, and thus, consonant with the transactional approach, the entire time continuum in which force must be used during a robbery now includes acts done before, during, and after the commission of the larceny. This argument fails as a matter of statutory interpretation for two reasons.

First and foremost, the meaning of the word "attempt" is not synonymous with "before" or "as a preface," as defendant's argument requires. While "attempt" refers to an unsuccessful effort to complete an act, "before" is defined as "in front of; ahead of" and "[p]rior to."[30] These concepts are not equivalent, and the best way to determine the Legislature's intent is by giving plain meaning to the words actually used, rather than presuming that the Legislature *meant* to say something entirely different. This Court will not assume that the Legislature inadvertently made use of one word or phrase instead of another.[31]

Second, the Legislature used the phrase "in an attempt" *twice* in the statute, but defendant would have this Court impute the "before" meaning of "attempt" only to the

---

[30] *The American Heritage Dictionary* (1976).

[31] *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931). If the Legislature had intended defendant's interpretation of "before," it very easily could have done so by providing, for example:

> As used in this section, "in the course of committing a larceny" includes acts that occur ~~in an attempt to commit~~ before the commission of the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

first use of that phrase, thereby rendering the statutory provision internally inconsistent. In addition to the use of "attempt" in the phrase "in an attempt to commit the larceny," MCL 750.530 also provides that "in the course of committing a larceny" includes "in an attempt to retain possession of the property."[32] Defendant does not argue that his "before" construction of "attempt" should apply to anything other than the phrase "in an attempt to commit the larceny."[33] Therefore, in order to adopt defendant's position, this Court would have to hold that the Legislature intended the same phrase to have two different meanings within the same sentence of the same statutory provision. Defendant's interpretation would require this Court not only to *redefine* an unambiguous statutory phrase in a contradictory manner, but to do so *selectively*.

Defendant's interpretation that the Legislature's use of "attempt to commit the larceny" merely serves as a placeholder for actions occurring before the larceny significantly ignores the fact that pre-larceny force was *already contemplated* under the prior version of the statute. *Randolph* itself recognized that when force is used before the

---

[32] In full, again, MCL 750.530(2) provides:

> As used in this section, "in the course of committing a larceny" includes acts that occur *in an attempt to commit the larceny*, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or *in an attempt to retain possession of the property*. [Emphasis added.]

[33] Consistently applying defendant's "before" meaning for "attempt" in construing the phrase "attempt to retain possession" would make the statute utterly senseless: "As used in this section, 'in the course of committing a larceny' includes acts that occur . . . ~~in an attempt to~~ before retai~~ning~~ possession of the property."

12

larceny, that force is sufficient to sustain a conviction for robbery.[34]  Indeed, this Court

was in unanimous agreement in *Randolph* on this point.[35]  Thus, given that the law

*already* provided that force used before the larceny was within the purview of the robbery

statute, it would be passing strange for the Legislature to have amended this statutory

language if it had merely intended to accomplish what already was.  This conclusion is

particularly compelling because the 2004 amendments were, in part, a legislative

response to *Randolph*.

Instead, we believe that the clear language of the amended statutes reflects a

legislative intent to effect a *broader change* in the robbery statutes.  The 2004 revisions

*deleted* the words denoting *actual* deprivation of property—"rob, steal and take"—and

replaced them with a broader phrase: "in the course of committing a larceny."[36]  The

---

[34] See *Randolph*, 466 Mich at 550 ("The rule is simple: a defendant commits an unarmed robbery when he takes the property of another by the use of force, violence, or putting in fear. . . .  The force, violence or putting in fear *must be used before or contemporaneous with the taking*.") (emphasis added).

[35] See *id.* (majority position, opinion by MARILYN KELLY, J.); *id.* at 555-556 (MARKMAN, J., dissenting) (arguing in favor of adopting the transactional approach to robbery, stating that when a larceny accompanied by "an assault occurs *at any time during which the property can be said to be in the victim's presence*, a robbery within the meaning of the statute occurs") (emphasis added).

[36] Contrary to defendant's argument, we note that the fact that the Legislature used the definite article "the" in the phrase "attempt to commit the larceny" is immaterial to the decision of this case.  Defendant argues that the use of a definite article supports his contention that an *actual* larceny must be committed.  While we have recognized in appropriate cases that the use of a definite or indefinite article may alter the meaning of a statutory phrase, see, e.g., *Robinson v City of Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010); *Robinson v Detroit*, 462 Mich 439, 458-463; 613 NW2d 307 (2000), defendant misapprehends the meaning of the definite article in the statute.  In context, MCL

13

deletion and replacement of what this Court long ago called the "familiar words" of robbery is perhaps the best and most compelling indication that the Legislature intended an extensive deviation from the common law rule. Such a revision would have been completely unnecessary if the Legislature had merely sought to adopt a transactional theory of robbery.

Ultimately, defendant and the dissent would have this Court interpret the robbery statutes in accordance with an unstated legislative intent rather than the plain meaning of the words chosen.[37] This approach to statutory interpretation has been consistently criticized and rejected.[38] So too has this Court rejected the dissent's resort to unauthoritative legislative analyses in order to displace statutory language.[39] Because the

---

750.530(2) provides in relevant part: "As used in this section, 'in the course of committing *a larceny*' includes acts that occur in an attempt to commit *the larceny . . . .*" (Emphasis added). This statutory provision is definitional; that is, its purpose is to define the phrase "in the course of committing a larceny" as used in the statute. The use of the definite article "the" in the phrase "in an attempt to commit the larceny" merely refers to the larceny identified in the term being defined: "in the course of committing *a* larceny." Thus, the "the larceny" referred to in this definitional phrase is *not* a new, completed larceny, but instead provides meaning and explanation for the referent phrase being defined, which itself uses an indefinite article.

[37] Indeed, the dissent undertakes no effort whatsoever to interpret the *actual words* of the statutes or address any of the text-based arguments that this opinion raises in support of our conclusion.

[38] See, e.g., *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 164-165; 680 NW2d 840 (2004).

[39] See, e.g., *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001) (stating that "in Michigan, a legislative analysis is a feeble indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction"); *In re Certified Question from the United States Court of Appeals for the Sixth Circuit (Kenneth Henes v Continental Biomass)*, 468 Mich 109, 115 n 5; 659 NW2d

Legislature specifically defined "in the course of committing a larceny," it would be inappropriate for this Court to provide meaning to that phrase in a contrary or alternative way.[40] But by arguing that the 2004 amendments of MCL 750.530 should be limited to

597 (2003) (discussing why a legislative analysis, as opposed to other forms of legislative history, is a poor aid in statutory interpretation and thus "should be accorded very little significance by courts when construing a statute").

[40] For similar reasons, we reject the "common law lens" approach employed by the Court of Appeals dissent in this case, the result of which effectively writes the word "attempt" out of the statute. The dissent concluded that "the Legislature did not intend that the armed robbery statute would permit a conviction absent an accomplished larceny" because "[u]nder the common law, the crime of robbery indisputably included as an essential element the commission of a larceny." *Williams*, 288 Mich App at 92-93 (GLEICHER, J., dissenting). The Court of Appeals dissent purported to rely on the well-established principle that because the basis for the criminal law of this state is the common law, see *People v McDonald*, 409 Mich 110, 117; 293 NW2d 588 (1980), the Legislature must make clear when it intends to modify the common law. However, the dissent below failed to acknowledge the full significance of its own express statements that, as each of the authorities it cited explicitly noted, the common law understandings remain in effect *only until the Legislature acts in a different or contrary manner*. See *Williams*, 288 Mich App at 90 (GLEICHER, J., dissenting) ("The common-law definition of a crime binds Michigan courts *until the Legislature modifies the elements of the crime*."), citing *People v Perkins*, 468 Mich 448, 455; 662 NW2d 727 (2003) (emphasis added); *Williams*, 288 Mich App at 91 (GLEICHER, J., dissenting) ( "'[W]hen words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law *unless a contrary intent is plainly shown*.'"), quoting *Covelesky*, 217 Mich at 100 (emphasis added); *Williams*, 288 Mich App at 91 (GLEICHER, J., dissenting) (stating that when the Legislature borrows a term of art, "'*absence of contrary direction* may be taken as satisfaction with widely accepted definitions, not as a departure from them'"), quoting *People v Riddle*, 467 Mich 116, 125; 649 NW2d 30 (2002), and *Morissette v United States*, 342 US 246, 263; 72 S Ct 240; 96 L Ed 288 (1952) (emphasis added). While a statute "will not be extended by implication to abrogate established rules of common law," the statute "must be construed sensibly and in harmony with the legislative purpose." *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 508; 309 NW2d 163 (1981).

15

the adoption of a transactional approach to robbery, that is precisely what defendant and the dissent would have this Court do. Even recognizing that the Legislature's 2004 revisions were spurred by a response to *Randolph*, it is clear that the Legislature has plainly and objectively done more than adopt a transactional approach to robbery. The Legislature's decision to include attempted robbery within the understanding of robbery itself represents a legislative choice—an exercise of its prerogative to define the elements of a crime—that this Court will not upset.

We further note that the Legislature's particular policy decision in amending the robbery and armed robbery statutes is consistent with the Model Penal Code (MPC), which provides:

> (1) <u>Robbery Defined.</u> A person is guilty of robbery if, *in the course of committing a theft*, he:
>
> (a) Inflicts serious bodily injury upon another; or
>
> (b) Threatens another with or purposely puts him in fear of immediate serious bodily injury; or
>
> (c) Commits or threatens immediately to commit any felony of the first or second degree.

---

Thus, if the Legislature modifies a criminal statute, courts must look for "a contrary intent" from the common law understanding to determine whether the Legislature has effected a substantive change in the way the crime is understood. When, as here, such a change is plainly shown, it is insufficient to continue to view the statute through a "common law lens." Such an approach would be inconsistent with appropriate principles of judicial construction. "In the course of committing a larceny" is a statutory, not common law, phrase, and it is *explicitly defined* in an unambiguous manner by MCL 750.530. Accordingly, that definition *must* control, and the "lens of the common-law definitions" may not be used to provide a gloss on the statutorily provided meaning.

16

An act shall be deemed "in the course of committing a theft" if it occurs *in an attempt to commit theft* or in flight after *the attempt* or commission.[41]

It is noteworthy that the MPC's definition of robbery is its strikingly similar to that of Michigan's amended robbery statute.[42] The almost identical usage of "in the course of committing a larceny/theft" in the MPC and MCL 750.530 indicates a more expansive conception of robbery than previously existed in Michigan law. In particular, like that of MCL 750.530, the MPC's definition for "in the course of committing a theft" *explicitly includes the attempt form of robbery* in an almost identical fashion. With regard to this change to subsume attempted robbery under the robbery provision itself, the official comment to MPC § 222.1 provides a useful and telling discussion:

> Since common-law larceny and robbery required asportation, the severe penalties for robbery were avoided if the victim had no property to hand over or if the theft were interrupted before the accused laid hold of the goods. Moreover, the penalties for attempted robbery were considerably milder than those authorized for the completed crime. The perception that one who attempts a robbery poses essentially the same dangers as the successful robber led legislatures to develop more serious sanctions for various forms of attempt. The offense of assault with intent to rob was one

---

[41] 2 American Law Institute (ALI), Model Penal Code and Commentaries (1980), § 222.1, p 96 (italics added).

[42] Our task when interpreting a statute is to give effect to the intent of the Legislature. Thus, we do not refer to the MPC as a means of interpreting the Michigan statutes at issue, but instead to provide a *context* for those changes. Given the almost identical language used in the MPC and revised statutes, it is reasonable to believe that the statutes were amended not to reinforce but to supplant the traditional understanding of robbery, as the MPC also accomplishes. Thus, the Michigan Legislature's use of the MPC language complements our conclusion that the Legislature was not undertaking an effort to (re)codify the common law understanding with the 2004 revisions.

response and redefining robbery to include an assault with intent to rob was another. Often some distinctions in penalty were preserved.

There is, however, no penological justification for distinctions on this basis. The same dangers are posed by the actor who is interrupted or who is foiled by an empty pocket as by the actor who succeeds in effecting the theft. The same correctional dispositions are justified as well. The primary concern is with the physical danger or threat of danger to the citizen rather than with the property aspects of the crime. By including attempted thefts within the time span during which robbery can occur, Section 222.1 therefore makes it immaterial whether property is obtained.[43]

At least 23 states in addition to Michigan have instituted changes including attempts to rob as sufficient to prove robbery itself, often adopting a "course of conduct" theory of when robbery occurs.[44]

The desire to punish attempted robberies the same as a robbery itself corresponds with the understanding, long recognized in Michigan, that the greater social harm perpetrated in a robbery is the use of force rather than the actual taking of another's property. As this Court has explained:

---

[43] 2 ALI, Model Penal Code, comment 2(a) to § 222.1, pp 99-100.

[44] See *Alabama*—Ala Code 13A-8-40; *Alaska*—Alas Stat 11.41.510; *Arkansas*—Ark Code Ann 5-12-102; *Delaware*—Del Code tit 11, § 831; *Florida*—Fla Stat 812.13; *Hawaii*—Hawaii Rev Stat 708-842; *Iowa*—Iowa Code 711.1; *Kentucky*—Ky Rev Stat Ann 515.030; *Maine*—Me Rev Stat tit 17-A, § 651; *Maryland*—Md Code Ann, Crim Law 3-402; *Montana*—Mont Code Ann 45-5-401; *New Hampshire*—NH Rev Stat Ann 636:1; *New Jersey*—NJ Stat Ann 2C:15-1; *North Carolina*—NC Gen Stat 14-87; *North Dakota*—ND Cent Code 12.1-22-01; *Ohio*—Ohio Rev Code Ann 2911.02; *Oregon*—Or Rev Stat 164.395; *Pennsylvania*—18 Pa Cons Stat 3701; *Texas*—Tex Penal Code Ann 29.01; *Utah*—Utah Code Ann 76-6-301; *Vermont*—Vt Stat Ann tit 13, § 608; *West Virginia*—W Va Code 61-2-12; *Wyoming*—Wyo Stat Ann 6-2-401.

Robbery, while containing elements of theft of property, is primarily an assaultive crime. "Robbery violates the social interest in the safety and security of the person as well as the social interest in the protection of property rights. In fact, as a matter of abstract classification, it probably should be grouped with offenses against the person . . . ." Classification as an offense against a person is particularly appropriate where the robbery is committed with the aggravating element of the perpetrator being armed. In this situation, the safety and security of the person is most severely threatened, and the larcenous taking is of secondary importance.[45]

In accord, the plain language of the 2004 statutory revisions of MCL 750.529 and MCL 750.530 establishes the Legislature's clear intent to include attempts to rob within the scope of the robbery statutes. Accordingly, when an intended robber is in possession of, appears to be in possession of, or represents that he is in possession of a dangerous weapon as stated in MCL 750.529, that person may be guilty of armed robbery even if the larcenous taking is not completed.

## V. APPLICATION

Aside from the question whether a completed larceny is necessary to support a conviction for robbery, the parties in this case do not dispute that defendant's plea was sufficient to sustain a conviction for armed robbery of the tobacco shop. Having held that

---

[45] *People v Hendricks*, 446 Mich 435, 449-450; 521 NW2d 546 (1994), citing *People v Wakeford*, 418 Mich 95; 341 NW2d 68 (1983), and *People v Allen*, 429 Mich 558; 420 NW2d 499 (1988), and quoting Perkins & Boyce, Criminal Law (3d ed), p 350; see also *Wakeford*, 418 Mich at 111 (stating that with regard to armed robbery, "the gravamen of the offense is the armed assault on a person when combined with the taking of money or property" and that "[t]he primary purpose of the statute is the protection of persons; the protection of property afforded by the statute is not significantly greater than that afforded by the statute prohibiting larceny from the person of another").

an attempted larceny may satisfy the requirements of MCL 750.529 and MCL 750.530, as amended, we affirm defendant's conviction.

At his plea allocution, defendant admitted that he assaulted, or otherwise used the threat of force or violence against, the clerk in "the course of committing a larceny" of the tobacco shop. Defendant admitted that it was his intent to rob the clerk of the tobacco shop's money. It also was established at defendant's plea hearing that at the time of the robbery defendant intimated that he had a dangerous weapon, both by verbally alluding to this fact and by placing his hand under his clothing so as to represent that he was armed with a weapon. Even though defendant was unsuccessful in obtaining money, his attempt to complete a larceny while representing that he was armed with a dangerous weapon satisfied MCL 750.529. Accordingly, the facts elicited at the plea allocution were sufficient to sustain defendant's conviction for armed robbery, and the circuit court did not err by denying defendant's motion to withdraw that plea.

## VI. CONCLUSION

In 2004, the Legislature considerably broadened the scope of the robbery statute, MCL 750.530, to encompass a "course of conduct" theory of robbery, which specifically includes "an attempt to commit the larceny." We conclude that this amendment effectuated a substantive change in the law governing robbery in Michigan such that a

completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery.  The judgment of the Court of Appeals is affirmed.

                                                  Robert P. Young, Jr.
                                                  Stephen J. Markman
                                                  Mary Beth Kelly
                                                Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 141161

GLENN TERRANCE WILLIAMS,

      Defendant-Appellant.

_____

MARILYN KELLY, J. (*dissenting*).

At issue in this case is whether a larceny must be completed before a criminal defendant may be convicted of armed robbery. The majority concludes that a completed larceny is not necessary to sustain a conviction for that crime. Because I disagree with its conclusion, I respectfully dissent.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2006, a man matching defendant's description entered a gas station in Norton Shores and announced to the station attendant that he had a gun. He demanded all the money in the register. After the attendant complied, the man fled.

The next day, defendant entered a Muskegon County tobacco store. The store clerk was standing behind the cash register. With his hand inside his jacket, defendant announced to the clerk, "[Y]ou know what this is, just give me what I want." However, the clerk did not give defendant money, and defendant fled without stealing anything. Defendant allegedly broke his leg while in flight, and the police apprehended him later

that day.  The arresting officers noted that defendant was dressed in the same clothing worn by the man who had robbed the gas station the previous day.

In the information, defendant was charged with armed robbery of the gas station. He was also charged with assault with intent to rob while armed and armed robbery of the tobacco store.  In exchange for a guilty plea to the tobacco store robbery and a *nolo contendere* plea to the gas station robbery, the prosecutor dismissed the charge of assault with intent to rob while armed.

At his hearing, defendant stated that he was pleading of his own volition.  He said that no promises had been made to induce his pleas, other than a *Cobbs*[1] agreement for a cap on his minimum sentence.  While entering defendant's pleas on the record, the prosecutor suggested that the court review the tobacco store incident to establish the necessary facts.  Defendant admitted that he had entered the store with the intent to steal money and that he held his hand "up under" his coat.  He further admitted that he had told the clerk, "[Y]ou know what this is, just give me what I want."  The following exchange ensued:

> *The Prosecutor*: Okay.  And it was your intent, at that time, for her to give you the money out of the cash register, is that right?
>
> *The Defendant*: Yeah.
>
> *The Prosecutor*: All right.
>
> *The Court*: Great—
>
> *The Prosecutor*: And I think that satisfies.

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

2

*The Court*: Great.  I think we're all set on [the tobacco store].

After agreeing that the police report established a sufficient factual basis for the gas station robbery, defendant entered a *nolo contendere* plea to that charge.  The trial court sentenced defendant pursuant to his *Cobbs* agreement to concurrent terms of imprisonment for 24 to 40 years.

Later, defendant moved to withdraw his pleas, claiming that the factual bases for the charges were insufficient.  Specifically, defendant argued that there was no evidence that he had committed a larceny of the tobacco store.  He asserted that the police report did not sufficiently identify him as the gas station robber.  The trial court denied defendant's motions.  With respect to the tobacco store incident, it ruled that the language of the armed robbery statute[2] allows for a conviction predicated on attempted larceny, which the plea discussions substantiated.  With respect to the gas station incident, the court ruled that the entirety of the police report and the statements made at the plea hearing established defendant's participation in the robbery.

The Court of Appeals granted defendant's delayed application for leave to appeal, limited to the issue whether a completed larceny was necessary to sustain defendant's conviction of armed robbery of the tobacco store.[3]  The Court of Appeals majority concluded that the statutory language defining robbery and armed robbery encompasses attempted larcenies and that, as a result, a completed larceny is not required to obtain a

---

[2] MCL 750.529.

[3] *People v Williams*, unpublished order of the Court of Appeals, entered June 16, 2008 (Docket No. 284585).

3

conviction.[4]    Judge GLEICHER dissented and would have reached the opposite conclusion.[5]

We granted defendant's application for leave to appeal.[6]

## STANDARD OF REVIEW AND LEGAL BACKGROUND

Matters of statutory interpretation present questions of law, which we review de novo.[7]

The common law underlies Michigan's criminal statutes.[8]   Indeed, this Court has long held that the common law definition of a crime binds Michigan courts unless and until the Legislature modifies the elements of a crime.[9]   Likewise, we recognized in *People v Covelesky* that "when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown."[10]

---

[4] *People v Williams*, 288 Mich App 67; 792 NW2d 384 (2010).

[5] *Id*. at 91 (GLEICHER, J., dissenting).

[6] *People v Williams*, 489 Mich 856 (2011).

[7] *People v Thompson*, 477 Mich 146, 151; 730 NW2d 708 (2007).

[8] Const 1963, art 3, § 7; see also *People v McDonald*, 409 Mich 110, 117; 293 NW2d 588 (1980).

[9] See, e.g., *People v Perkins*, 468 Mich 448, 455; 662 NW2d 727 (2003); *People v Riddle*, 467 Mich 116, 126; 649 NW2d 30 (2002); *People v Schmitt*, 275 Mich 575, 577; 267 NW 741 (1936); *People v Utter*, 217 Mich 74, 86; 185 NW 830 (1921).

[10] *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921).

4

Historically, Michigan's robbery statutes are derived from the common law crime of robbery. An essential element of the crime included the commission of a larceny.[11] We observed as much in *Covelesky*, noting that

> [r]obbery at common law is defined as the felonious *taking of money or goods of value* from the person of another or in his presence, against his will, by violence or putting him in fear. This definition has been followed by most of the statutes, and even where the language has been varied sufficiently to sustain, by a literal interpretation, a narrower definition of the offense, it has usually been held that it could not be presumed that the legislature intended to change the nature of the crime as understood at common law.[12]

Thus, at common law, robbery included three elements: (1) a larceny of money or goods of value from a person, (2) against the person's will, (3) by violence or putting the person in fear. Our Court of Appeals has also long observed that a completed larceny is an essential element of armed robbery.[13]

In *People v Randolph*,[14] we examined the original version of MCL 750.530 in the Michigan Penal Code, which provided, in relevant part:

> Any person who shall, by force or violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny,

---

[11] A "larceny" is an "unlawful taking and carrying away of someone else's personal property with the intent to deprive the possessor of it permanently." Black's Law Dictionary (9th ed).

[12] *Covelesky*, 217 Mich at 96-97 (emphasis added; citation and quotation marks omitted).

[13] See, e.g., *People v Needham*, 8 Mich App 679, 683; 155 NW2d 267 (1967), citing 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2218, pp 2241-2242.

[14] *People v Randolph*, 466 Mich 532; 648 NW2d 164 (2002).

such robber not being armed with a dangerous weapon, shall be guilty of a felony . . . .[15]

The issue in *Randolph* was whether the crime of robbery set forth in MCL 750.530 was properly viewed by means of a "transactional approach."  Under this approach, an offender is not viewed as having completed a robbery until he or she has escaped with stolen merchandise.  *Randolph* rejected the transactional approach, holding that if force is used to *re*tain, rather than *ob*tain, property, the crime is outside the scope of MCL 750.530.[16]  We further held that, under the common law, the force or violence element of robbery "had to be applied before or during the taking."[17]  We explicitly noted that, after the initial larcenous act has been completed, the use of force against a victim to retain stolen property does not transform the offense into armed robbery.[18]  Rather, the force or violence must be used before or contemporaneously with the larceny to elevate the offense to robbery.

In response to our decision in *Randolph*, the Legislature amended our robbery statutes in 2004.[19]  MCL 750.529, the armed robbery provision, now reads in relevant part as follows:

> A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person

---

[15] As enacted by 1931 PA 328.

[16] *Randolph*, 466 Mich at 541-543.

[17] *Id*. at 538.

[18] *Id*. at 543.

[19] 2004 PA 128.

6

present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

At the same time, the Legislature also revised the statutory definition of unarmed robbery in MCL 750.530. It did so to clarify the scope of the unlawful conduct proscribed by MCL 750.529, which refers to MCL 750.530. MCL 750.530 now provides:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

Central to the resolution of this case is the definition of "in the course of committing a larceny" in MCL 750.529(2). Specifically, we must consider whether the addition of the phrase "acts that occur in an attempt to commit the larceny" in that definition eliminated the common law requirement of a completed larceny as a prerequisite for an armed robbery conviction.

ANALYSIS

Against this backdrop, the starting point in any statutory interpretation dispute is the language of the relevant statutes.[20] When considering the correct statutory

---

[20] *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 76; 780 NW2d 753 (2010).

interpretation, statutory language must be read as a whole.[21] "Individual words and phrases, while important, should be read in the context of the entire legislative scheme."[22] Furthermore, "'the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.'"[23]

As Judge GLEICHER noted in her Court of Appeals dissent, the language of MCL 750.530 refutes the proposition that our robbery statutes allow for conviction without proof of a completed larceny.[24] Under MCL 750.530, a person who "in the course of committing a larceny" uses force or violence, puts in fear, or assaults another is guilty of a felony. The statutory phrase "in the course of committing a larceny" includes "acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission or the larceny, or in an attempt to retain possession of the property."

Through this language, the Legislature explicitly indicated that the use of force or violence at any time during the commission of a larceny subjects offenders to prosecution for armed robbery. Hence, "the Legislature intended to expand the temporal scope of the crime . . . ."[25] The language it chose merely reflects its rejection of *Randolph*. It does not eliminate the requirement of an actual larceny.

---

[21] *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009).

[22] *Id*.

[23] *People v Feezel*, 486 Mich 184, 211; 783 NW2d 67 (2010), quoting *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (2003).

[24] *Williams*, 288 Mich App at 96-97 (GLEICHER, J., dissenting).

[25] *Id*. at 97.

The House legislative analysis of HB 5015, which became 2004 PA 128, also supports my conclusion that the Legislature did not intend to abrogate the common law requirement of a completed larceny to sustain a robbery conviction. That analysis described our decision in *Randolph* as the problem that HB 5105 would rectify. It indicated that the bill would eliminate *Randolph*'s holding that applied only to those acts in which force was used to accomplish a larceny.[26] The section describing the contents of the bill indicated that it would expand the crime of armed robbery. The crime would include a person who, in the course of engaging in the proscribed conduct, "represented orally or otherwise that he or she was in possession of a dangerous weapon."[27]

The arguments for HB 5015 summarized in the House legislative analysis further illustrate the bill's purpose. For example, one such argument for the bill stated:

> Currently, a charge of robbery can only be made if force or violence were used to *commit the larceny*. Revising the statutes will allow prosecutors more latitude to prosecute similar crimes in similar ways. For example, under the recent court interpretation of the robbery laws, it would be a crime of armed robbery if a gun were brandished immediately before or while property *was being taken*. However, it would not be a crime of armed robbery if the gun was not brandished until the suspect was trying to evade capture by a security guard or passerby. The bill would revise the state's robbery statutes to include any *crime of larceny* that involved the use of force or violence, or fear, *at any time during the commission of the crime*. Therefore, if force or violence were used *to take property*, *to retain property*, or to evade apprehension *after taking property*, the act could constitute robbery.[28]

---

[26] House Legislative Analysis, HB 5015, February 12, 2004, p 1.

[27] *Id*.

[28] *Id*. at 2 (emphasis added).

A second argument in support of the bill stated:

> Before the 2002 state supreme court decision interpreted the robbery statutes as applying only in those cases in which force or violence were used *in the taking of property*, the state's appellate courts were moving towards what is known as the "transactional approach" . . . . Even though this approach included as robbery some acts that would not be considered robbery under the *Randolph* decision, it still is problematic. For example, say property *is taken* from a convenience store without force, but force is used to keep possession of the stolen property or in an attempt to flee from a security guard or police officer. Under the transactional approach, the crime would be elevated to robbery if the suspect escaped apprehension and attained temporary safety but would not be robbery if the suspect were apprehended by the security guard or police officer because that means he or she had never attained temporary safety. Moreover, the current law reflects the mindset of the early 1830s, whereas the bill is similar to revisions other states have made that include not only *the actual taking or larceny* as the crime of robbery, but also those acts committed in trying to keep possession of the property and acts committed in trying to escape apprehension.[29]

These arguments make clear that the revisions of the robbery statutes were intended to elevate to robbery any completed larceny that included force before, during, or after the taking. They explicitly indicate that a completed larceny remains part of a robbery. The Legislature was merely displeased with *Randolph* and enacted legislation to allow for an enhanced charge of robbery when a larcenist employs force.

While the language of the House legislative analysis provides an understanding of the Legislature's intentions, equally telling is what is lacking from that analysis. Nowhere in the public act or the House legislative analysis is there any indication that the Legislature intended to abrogate the common law requirement that a robbery include a completed larceny. Although the Legislature has the authority to set aside the common

---

[29] *Id*. at 2-3 (emphasis added).

10

law, it has long been recognized that "[w]hen it does so, it should speak in no uncertain terms."[30]  In 2004 PA 128, there are no "terms," let alone "uncertain" ones, that support the conclusion that a completed larceny is no longer an element of robbery.[31]

---

[30] *Hoerstman Gen Contracting v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006); see also *Bandfield v Bandfield*, 117 Mich 80, 82; 75 NW 287 (1898).

[31] By fiat, the majority announces that the Court has rejected my "resort to unauthoritative legislative analyses in order to displace statutory language." *Ante* at 14. Indeed, both cases the majority cites for this proposition are merely the personal preferences of then Justice YOUNG and the justices subscribing to his interpretive methods.  But those methods are not binding on other justices of the Court.  To be clear, I reject the notion that my brethren may hamstring the manner in which I engage in statutory interpretation.  While the majority may prefer to ignore these interpretive aids, I do not.  Nor am I alone.  As Justice Stevens of the United States Supreme Court stated:

> In refusing to examine the legislative history that provides a clear answer to the question whether Congress intended the scope of the mineral reservations in these two statutes to be identical, the plurality abandons one of the most valuable tools of judicial decisionmaking.  As Justice Aharon Barak of the Israel Supreme Court perceptively has explained, the "minimalist" judge "who holds that the purpose of the statute may be learned only from its language" retains greater discretion than the judge who "will seek guidance from every reliable source."  Judicial Discretion 62 (Y. Kaufmann transl.1989).  A method of statutory interpretation that is deliberately uninformed, and hence unconstrained, increases the risk that the judge's own policy preferences will affect the decisional process.

*BedRoc Ltd, LLC v United States*, 541 US 176, 192; 124 S Ct 1587; 158 L Ed 2d 338 (2004) (Stevens, J., dissenting); see also *In re Certified Question from the United States Court of Appeals for the Sixth Circuit (Kenneth Henes v Continental Biomass)*, 468 Mich 109, 119; 659 NW2d 597 (2003) (CAVANAGH, J., concurring), and *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 588; 624 NW2d 180 (2001) (KELLY, J., concurring).

Therefore, robbery still requires a completed larceny as a predicate to conviction. The majority's conclusion to the contrary defies the statutory language as well as the Legislature's intent.

## THE MAJORITY OBLITERATES THE DISTINCTION BETWEEN ARMED ROBBERY AND ASSAULT WITH INTENT TO ROB AND STEAL WHILE ARMED

A further indication that the majority's statutory interpretation is incorrect is that it effectively writes out of existence the crime of assault with intent to rob and steal while armed. In this regard, MCL 750.89 provides:

> Assault with intent to rob and steal being armed—Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.

Thus, a person violates MCL 750.89 if he or she intends to rob another while in possession of a weapon but fails and a completed larceny does not occur.

Under the majority's flawed analysis, the armed robbery statute, MCL 750.529, is now nearly identical to assault with intent to rob and steal while armed, MCL 750.89. Indeed, a defendant may now be convicted of armed robbery if (1) while armed with a dangerous weapon or any article used or fashioned in a manner to lead a person to believe it to be a dangerous weapon, (2) he or she assaults another with intent to rob and steal. There is no longer a distinction between armed robbery and assault with intent to rob and steal while armed. Yet the Legislature saw fit to draw a distinction between the two crimes by requiring a *completed* larceny for armed robbery, not merely an *intended* one. Otherwise, there would be no purpose to having two discrete statutes on the books.

12

The majority's analytical mistake is made clear when reference is made to our criminal jury instructions. When a defendant is charged with armed robbery, trial courts instruct the jury as follows:

(1) The defendant is charged with the crime of armed robbery. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, the defendant [used force or violence against / assaulted / put in fear] *[state complainant's name]*.

(3) Second, the defendant did so while [he / she] was in the course of committing a larceny. A "larceny" is the taking and movement of someone else's property or money with the intent to take it away from that person permanently.

"In the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property or money.

(4) Third, *[state complainant's name]* was present while defendant was in the course of committing the larceny.

(5) Fourth, that while in the course of committing the larceny, the defendant:

*[Choose one or more of the following as warranted by the charge and proofs:]*

(a) possessed a weapon designed to be dangerous and capable of causing death or serious injury; [or]

(b) possessed any other object capable of causing death or serious injury that the defendant used as a weapon; [or]

(c) possessed any [other] object used or fashioned in a manner to lead the person who was present to reasonably believe that it was a dangerous weapon; [or]

13

(d) represented orally or otherwise that [he / she] was in possession of a weapon.[32]

When a defendant is charged with assault with intent to rob and steal while armed, trial courts instruct the jury as follows:

(1) The defendant is charged with the crime of assault with intent to commit armed robbery. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant assaulted *[name complainant]*. There are two ways to commit an assault. Either the defendant must have attempted or threatened to do immediate injury to *[name complainant]*, and was able to do so, or the defendant must have committed an act that would cause a reasonable person to fear or apprehend an immediate injury.

(3) Second, that at the time of the assault, the defendant was armed with:

*[Choose one or more of the following:]*

(a) A weapon designed to be dangerous and capable of causing death or serious injury; [or with]

(b) Any [other] object capable of causing death or serious injury that the defendant used as a weapon; [or with]

(c) Any [other] object used or fashioned in a manner to lead the person who was assaulted to reasonably believe that it was a dangerous weapon.

(4) Third, that at the time of the assault the defendant intended to commit robbery. *Robbery occurs when a person assaults someone else and takes money or property from [him / her] or in [his / her] presence, intending to take it from the person permanently.* It is not necessary that the crime be completed or that the defendant have actually taken any money or property. However, there must be proof beyond a reasonable doubt that at the time of the assault the defendant intended to commit robbery.[33]

---

[32] CJI2d 18.1.

[33] CJI2d 18.3 (emphasis added).

14

The key distinction between armed robbery and assault with intent to rob and steal while armed, as highlighted by the model jury instructions, is whether a larceny is completed. To obtain a conviction, the prosecution must prove in both instances that an offender committed an assault. Likewise, both crimes require proof of the use of a weapon or an object fashioned as a weapon. But assault with intent to rob and steal while armed requires only the *intent* to commit a robbery; no completed larceny is required under CJI2d 18.3(4). By contrast, armed robbery requires a *completed* larceny. In fact, CJI2d 18.1(3) explicitly indicates that the prosecution must prove that a defendant "was in the course of committing a larceny" and defines "larceny" as "the taking and movement of someone else's property . . . ."

As discussed earlier, the Legislature is "'presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.'"[34] Yet under today's decision, the majority has usurped the Legislature's statutory distinction between armed robbery and assault with intent to rob while armed. In essence, it has merged the two offenses into one. Had the Legislature intended to eliminate the crime of assault with intent to rob while armed when it enacted 2004 PA 128, it could have explicitly done so. It did not. The majority offers no response when confronted with this significant analytical flaw.

---

[34] *Feezel*, 486 Mich at 211, quoting *Walen*, 443 Mich at 248.

15

Applying my analysis to this case, I believe that the trial court abused its discretion by denying defendant's motion to withdraw his plea.[35] There is no evidence that defendant committed a larceny at the tobacco store, and therefore there is an inadequate factual basis to support a finding that defendant is guilty of armed robbery. Therefore, I would reverse the judgment of the Court of Appeals.

CONCLUSION

I dissent from the majority's holding that a completed larceny is no longer necessary to sustain a conviction for armed robbery. The Legislature did not provide a clear indication that it wished to depart from the common law. Accordingly, I would reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway

---

[35] See *People v Watkins*, 468 Mich 233, 238; 661 NW2d 553 (2003) ("Before accepting a guilty plea, a trial court must question the defendant to ascertain whether there is support for a finding that the defendant is guilty of the offense to which he is pleading guilty.").